**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KRISTIN NICHOLS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 25-533** |
| **WHITNEY OIL & GAS, LLC, ET AL.** | **SECTION: "G"(1)** |

**ORDER AND REASONS**

This civil action was originally filed on January 23, 2025, in the Civil District Court for the Parish of Orleans by the surviving family members of Joshua Nichols, who died in an explosion involving a gas lift line in Garden Island Bay.[1] Plaintiffs Kristin Nichols and Lauren O'Neill, on behalf of Mr. Nichols's three minor children (collectively, "Plaintiffs"), assert claims under the Louisiana Wrongful Death and Survival Statutes and, alternatively, under the Jones Act.[2] On March 18, 2025, Defendant Whitney Oil and Gas, LLC ("Whitney") removed the action to this Court pursuant to 28 U.S.C. §§ 1452(a) and 1334, asserting federal jurisdiction on the basis that the claims are related to a pending bankruptcy proceeding.[3] Before the Court is Plaintiffs' Motion to Remand.[4] For the reasons discussed in more detail below , the Court finds that it has jurisdiction over this matter under 28 § U.S.C. 1334(b). Additionally, mandatory abstention does not apply, and permissive abstention is not appropriate in this case. Accordingly, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 1-1.

[2] *Id.*

[3] Rec. Doc. 1.

[4] Rec. Doc. 9.

## I. Background

On October 25 and 26, 2023, certain named Defendants herein, Whitney and Trimont Energy (NOW), LLC ("Trimont (NOW)"), together with non-Defendants Trimont Energy (GIB), LLC ("Trimont (GIB)") and Trimont Energy Limited, Inc. filed petitions for relief in the Bankruptcy Court for the Eastern District of Louisiana under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").[5] In the Chapter 11 bankruptcy cases, the debtors received approval to sell certain property of the debtors' estates to interested purchasers pursuant to Sections 363 and 365 of the Bankruptcy Code. On May 29, 2024, the Bankruptcy Court approved the sale of certain property from Trimont (GIB) to a named Defendant in this matter, Spectrum AR, LLC ("Spectrum AR").[6] The sale included mineral leases, wells, facilities, and equipment related to the production and transportation of hydrocarbons located in the Garden Island Bay area ("GIB Assets"), as well as the assignment of related executory contracts to Spectrum AR.[7]

The Purchase and Sale Agreement ("PSA") for the GIB Assets maintained and created mutual obligations.[8] Under the PSA, Trimont (GIB) retained liability "to third parties for personal injury or wrongful death to the extent attributable to Seller's ownership and operation of the Assets prior to the Effective Time."[9] The PSA obligates Spectrum AR to indemnify Trimont (GIB) and its "agents, partners, … affiliates, subsidiaries, successors, and assigns" for losses relating to the

---

[5] *In re Whitney Oil & Gas LLC*, No. 23-11873 (Bankr. E.D. La. Oct. 26, 2023) (Rec. Doc. 1); *In re Trimont Energy (GIB) LLC*, No. 23-11869 (Bankr. E.D. La. Oct. 25, 2023) (Rec. Doc. 1); *In re Trimont Energy (NOW) LLC*, No. 23-11868 (Bankr. E.D. La. Oct. 25, 2023) (Rec. Doc. 1); *In re Trimont Energy Limited Inc.*, No. 23-11872 (Bankr. E.D. La. Oct. 26, 2023) (Rec. Doc. 1).

[6] *In re Whitney Oil & Gas LLC*, No. 23-11873 (Bankr. E.D. La. May 29, 2024) (Rec. Doc. 281).

[7] *Id.*

[8] *In re Whitney Oil & Gas LLC*, No. 23-11873 (Bankr. E.D. La. May 29, 2024) (Rec. Doc. 281 at 26–99); Rec. Doc. 11-1.

[9] Rec. Doc. 11-1 at 29.

GIB Assets, to the extent a claim arose after effective date of the sale.[10]

Following the sale of the GIB Assets, on August 17, 2024, Joshua Nichols died in a pipeline explosion that occurred while he was investigating a gas lift line leak from aboard a vessel in the Garden Island Bay.[11] On January 23, 2025, Plaintiffs filed a petition in the Civil District Court for the Parish of Orleans, State of Louisiana asserting claims "under the Louisiana Wrongful Death Action, and the Louisiana Survival Action statutes."[12] Plaintiffs also stated, "[a]lternatively, this claim is maintained under the Jones Act (46 U.S.C. § 30104) and/or the general maritime law of the United States."[13]

On March 18, 2025, Whitney removed the case to this Court.[14] The Notice of Removal alleges that the case is removable pursuant to 28 U.S.C. §§ 1334 and 1452 because "[t]he State Court Action concerns and relates to a Chapter 11 case that was administered before Judge Meredith Grabill of the United States Bankruptcy Court for the Eastern District of Louisiana entitled *In re Whitney Oil & Gas, LLC*, No. 23-11873."[15]

On April 17, 2025, Plaintiffs filed the instant Motion to Remand.[16] On May 6, 2025, Whitney, Trimont (NOW), Trimont Energy, LLC, DP Gulf Coast, LLC, and DP Louisiana, LLC (collectively, the "Whitney Defendants") filed an opposition to the motion.[17] The same day

---

[10] *Id.* at 31.

[11] Rec. Doc. 1-1 at 6.

[12] *Id.* at 4.

[13] *Id.*

[14] Rec. Doc. 1.

[15] *Id.* at 1–2.

[16] Rec. Doc 9.

[17] Rec. Doc. 10.

Defendants Spectrum Energy Holdings, Inc. and Spectrum Energy Oil & Gas Holdings, LLC (collectively, the "Spectrum Defendants") filed an opposition to the motion.[18] On May 9, 2025, Plaintiffs filed a reply brief in further support of the motion.[19]

Following the filing of the Motion to Remand, Defendant Spectrum AR and another Spectrum entity, Spectrum OpCo, LLC, filed a Complaint for Exoneration from or Limitation of Liability in the United States District Court for the Eastern District of Louisiana, Civil Action No. 25-1506. On July 25, 2025, the Court granted a motion approving the Limitation Petitioner's *ad interim* stipulations, directing the issuance of notice, and restraining the prosecution of any other claims pending against the Limitation Petitioners.[20]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of Remand*

Plaintiffs argue that this matter must be remanded for three reasons: (1) Whitney failed to meet its burden to prove that removal was proper; (2) the elements for mandatory abstention under 28 U.S.C. § 1334(c)(2) are satisfied; and (3) even if the elements for mandatory abstention are not met, the factors for permissive abstention and equitable remand weigh in favor of remand.[21]

First, Plaintiffs contend that Whitney failed to carry its removal burden.[22] According to Plaintiffs, the notice of removal failed to explain how Plaintiffs' claims are "related to" Whitney's Chapter 11 bankruptcy case.[23] Plaintiffs assert the conclusory allegation that "[t]he State Court

---

[18] Rec. Doc. 11.

[19] Rec. Doc. 14.

[20] *In re Spectrum AR, LLC*, No. 25-1506 (E.D. La. Jul. 25, 2025) (Rec. Doc. 5).

[21] Rec. Doc. 9 at 1.

[22] Rec. Doc. 9-1 at 3.

[23] *Id.*

Action concerns and relates to a Chapter 11 case that was administered before Judge Meredith Grabill" is insufficient.[24] Plaintiffs contend that Whitney has failed to explain how the outcome of this case could "alter the rights, obligations, and choices of action of the debtor" or "have an effect on the administration of the estate."[25]

Second, Plaintiffs argue that the Court should remand the case under the mandatory abstention doctrine.[26] Plaintiffs argue that the four factors for mandatory abstention are satisfied: (1) the action could not have been commenced in federal court absent bankruptcy jurisdiction; (2) the claims are not core bankruptcy claims; (3) the action was filed in state court, and (4) the action can be timely adjudicated there.[27]

Third, even if mandatory abstention does not apply, Plaintiffs argue that the Court should exercise its broad discretion to permissively abstain and equitably remand the case to state court.[28] Plaintiffs emphasize that the factors of comity, judicial economy, and state law weigh heavily in favor of remand.[29]

### B.    *The Whitney Defendants' Arguments in Opposition to Remand*

In opposition, the Whitney Defendants argue that Plaintiffs' claims relate to the bankruptcies of Whitney and Trimont (NOW).[30] The Whitney Defendants also suggest that the claims relate to the bankruptcy of Trimont (GIB), who has not been named as a defendant in this

---

[24] *Id.* at 4.

[25] *Id.*

[26] *Id.* at 4–5.

[27] *Id.* at 5–8.

[28] *Id.* at 8.

[29] *Id.* at 9–10.

[30] Rec. Doc. 10 at 1.

matter.[31] The Whitney Defendants point out that Plaintiffs' claims arose on August 17, 2024, over 10 months after the bankruptcies.[32] Therefore, the Whitney Defendants contend the Court has jurisdiction over the claims because they relate to the bankruptcies.[33] Additionally, the Whitney Defendants argue that a determination of whether Whitney and Trimont (NOW) are liable for the claims will likely in part depend on an interpretation of the sale agreement between Trimont (GIB) and Spectrum AR, which was reviewed and approved by the Bankruptcy Judge who retained jurisdiction to interpret disputes relating to the contract.[34] Additionally, the Whitney Defendants argue that the Court has jurisdiction over the entire case, including the claims against the non-debtor defendants, because those claims could impact the bankruptcies.[35]

Second, the Whitney Defendants argue that mandatory abstention does not apply for two independent reasons: (1) the Court has admiralty jurisdiction over this case and (2) the state court action was filed after the bankruptcy petitions.[36] Defendants contend that Mr. Nichols's death occurred aboard a vessel in the navigable water of Garden Island Bay, and the work being performed—pipeline maintenance from vessels—constitutes traditional maritime activity.[37] The Whitney Defendants also argue that mandatory abstention only applies when the state court action was pending prior to the bankruptcy filing.[38]

---

[31] *Id.* at 1, 2.

[32] *Id.* at 6.

[33] *Id.*

[34] *Id.* at 6–7.

[35] *Id.* at 8.

[36] *Id.* at 9–13.

[37] *Id.* at 9–10.

[38] *Id.* at 13.

Third, the Whitney Defendants contend that permissive abstention is only appropriate in rare cases and does not apply here.[39] Because the incident occurred in this judicial district, all defendants are subject to jurisdiction here, and discovery had not begun when the case was removed, the Whitney Defendants argue that judicial efficiency and convenience favor federal jurisdiction.[40] The Whitney Defendants contend that all claims can be adjudicated together in federal court, avoiding duplicative proceedings and inconsistent judgments.[41] The Whitney Defendants assert this case should remain in federal court because it involves federal law claims, asserted against two bankrupt entities, and relating to assets that were sold as part of the bankruptcy.[42]

Finally, the Whitney Defendants argue that Plaintiffs' demand for a jury trial does not mandate remand.[43] They contend that the case was removed under bankruptcy jurisdiction, not admiralty alone, and that a jury demand made in state court carries over to federal court under Rule 81(c).[44] Even in admiralty cases, the Whitney Defendants point out that jury trials are not prohibited where joined with non-admiralty claims.[45]

C.    *The Spectrum Defendants' Arguments in Opposition to Remand*

In opposition, the Spectrum Defendants argue that this Court has "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b) to hear Plaintiffs' claims against Spectrum and Spectrum

---

[39] *Id.* at 14.

[40] *Id.* at 15.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 16–17.

[44] *Id.* (citing Fed. R. Civ. P. 81(c)).

[45] *Id.*

AR, as they implicate the mutual indemnity obligations as between Spectrum AR and the Debtor-seller of the GIB Assets.[46] The Spectrum Defendants assert that the facts alleged in the Petition are sufficient to raise the prospect of a post-petition indemnity obligation, flowing either from the Debtor-seller's bankruptcy estate or from Spectrum AR to the Debtor-seller.[47]

The Spectrum Defendants contend that mandatory abstention does not apply because this Court has admiralty jurisdiction over the claims and because the state court suit was filed after the bankruptcy case.[48] Finally, the Spectrum Defendants argue that Plaintiffs have failed to meet their burden of showing that permissive abstention should apply.[49] According to the Spectrum Defendants, severing Plaintiffs' claims between the Debtor-Defendants and the Spectrum Defendants would be inefficient, wasteful, and risk inconsistent judgments.[50]

### D.    *Plaintiffs' Arguments in Further Support of Remand*

In reply, Plaintiffs point out that the Notice of Removal cited only one bankruptcy case, while the opposition to the Motion to Remand cites four bankruptcy cases.[51] Plaintiffs claim that "Whitney should not be allowed to remove a case and then, when faced with a remand motion, change the basis of its removal at a time when it is impractical for Plaintiffs to properly respond."[52] Plaintiffs contend that Whitney's initial removal did not satisfy the procedural requirements

---

[46] Rec. Doc. 11 at 4.

[47] *Id.* at 6.

[48] *Id.* at 7.

[49] *Id.* at 8.

[50] *Id.*

[51] Rec. Doc. 14 at 2.

[52] *Id.* at 3.

necessary to remove this case, and Plaintiffs argue that the Court should remand the case on that ground alone.[53]

Even assuming that this case "relates to" the bankruptcy case, Plaintiffs repeat their argument that mandatory abstention applies.[54] Because this case was not filed in federal court "in admiralty," Plaintiffs argue it does not trigger federal jurisdiction.[55] Additionally, Plaintiffs assert the state court lawsuit is not required to be filed prior to the bankruptcy proceeding.[56] Finally, even if mandatory abstention is not required, Plaintiffs argue that the Court should exercise its broad discretion to permissively abstain.[57]

### III. Law and Analysis

A.   *"Related To" Bankruptcy Jurisdiction*

To invoke jurisdiction under 28 U.S.C. § 1334(b), the removing party must establish that the claims are "related to" a pending bankruptcy proceeding or Title 11.[58] A proceeding is "related to" a bankruptcy case if the outcome "could conceivably affect the estate being administered in bankruptcy."[59] Additionally, the Court must consider whether the outcome of the case "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[60] More

---

[53] *Id.*

[54] *Id.*

[55] *Id.* at 4.

[56] *Id.*

[57] *Id.* at 6.

[58] *See* 28 U.S.C. § 1334(b); *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

[59] *In re TXNB Internal Case*, 483 F.3d at 298.

[60] *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995) (quotation marks and citations omitted).

precisely, courts ask whether the outcome of the litigation could "alter the debtor's rights, liabilities, options, or freedom of action" and thereby impact the handling and administration of the estate.[61]

"To fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor."[62] The Supreme Court has cautioned that federal courts' "related to" bankruptcy jurisdiction is not "limitless."[63] The Fifth Circuit has clarified that "related to" is a "term of art in bankruptcy jurisdiction, where its meaning is not as broad as it is in ordinary parlance where it means 'having some connection with.'"[64] According to the Fifth Circuit, the "related to" provision includes a causal component, whereby the instant proceeding "must be capable of affecting the bankruptcy estate for it to be 'related to' the bankruptcy."[65]

In the instant case Plaintiffs argue that Defendants have not demonstrated a sufficient connection to the bankruptcy estate, especially because the wrongful death claims arise from post-petition conduct. However, Defendants contend that the claims may give rise to administrative expense claims or trigger contractual indemnification obligations under an asset purchase agreement executed during bankruptcy proceedings.

If it is determined that Mr. Nichols's death was caused by the negligence of any of the defendants, the bankruptcy estates of Whitney and Trimont (NOW) will be impacted. The PSA for the GIB Assets, which the Bankruptcy Court approved, maintained and created mutual

---

[61] *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).

[62] *In re Wood*, 825 F.2d 90, 94 (5th Cir. 1987).

[63] *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

[64] *In re Bass*, 171 F.3d at 1022.

[65] *Id.* at 1022–23.

obligations.[66] Under the PSA, Trimont (GIB) retained liability "to third parties for personal injury or wrongful death to the extent attributable to Seller's ownership and operation of the Assets prior to the Effective Time."[67] The PSA obligates Spectrum AR to indemnify Trimont (GIB) and its "agents, partners, … affiliates, subsidiaries, successors, and assigns" for losses relating to the GIB Assets, to the extent a claim arose after effective date of the sale.[68] Due to this indemnity agreement, the outcome of this litigation could conceivably affect the administration of the bankruptcy estates. The facts alleged in the Petition are sufficient to raise the prospect of a post-petition indemnity obligation, flowing either from the debtor-seller's bankruptcy estate, which would diminish the estate to the detriment of creditors, or from Spectrum AR to the debtor-seller, which would increase the estate to the benefit of creditors. Because the facts alleged in the Petition give rise to an inference that Plaintiffs' claims will have a "conceivabl[e] affect" on the debtors' bankruptcy cases, this Court has "related to" jurisdiction over Plaintiffs' claims against both the Whitney Defendants and the Spectrum Defendants.[69]

## B.  *Mandatory Abstention*

Even when "related to" jurisdiction exists, a federal court must abstain under 28 U.S.C. § 1334(c)(2) if the following conditions are met: "(1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, *i.e.*, it is related

---

[66] *In re Whitney Oil & Gas LLC*, No. 23-11873 (Bankr. E.D. La. May 29, 2024) (Rec. Doc. 281 at 26–99); Rec. Doc. 11-1.

[67] Rec. Doc. 11-1 at 29.

[68] *Id.* at 31.

[69] *In re TXNB Internal Case*, 483 F.3d at 298.

or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court."[70]

In this case, there is an independent basis for federal jurisdiction under 28 § U.S.C. 1333. Section 1333 provides that federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." This case involves a maritime tort—a wrongful death occurring aboard a vessel on navigable waters. Plaintiffs do not dispute that the Court has admiralty jurisdiction over this case. In fact, the Petition cites the Jones Act and general maritime law as an alternate basis for Plaintiffs' claims.[71] Therefore, there is an independent basis for federal jurisdiction over this case under Section 1333.

Plaintiffs argue that mandatory abstention should apply because the case could not have been removable solely on the basis of admiralty jurisdiction. Plaintiffs are correct that removal of an admiralty action filed in state court is possible only if jurisdiction is based on other grounds.[72] However, "it is also well-established that the saving clause does not prevent the removal of maritime claims when original jurisdiction is based on something other than admiralty."[73] This case was not removed on the basis of admiralty jurisdiction, it was removed because it is related

---

[70] *Id.* at 300.

[71] Rec. Doc. 1-1 at 4. The parties agree that Plaintiffs cannot maintain a Jones Act claim because none of the defendants were Nichols's employer.

[72] *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996) ("It is well-established that maritime claims do not arise under the Constitution, treaties or laws of the United States for purposes of federal question and removal jurisdiction.").

[73] *Id.*

to a bankruptcy proceeding. Nevertheless, the fact that the Court also has admiralty jurisdiction over the case means that the first requirement for mandatory abstention is not met.[74]

Additionally, the state court action was filed after the initiation of the bankruptcy proceeding. "Many courts have held that, for the [mandatory abstention] to be applicable, the cause of action must have been commenced prior to the filing of the petition commencing the title 11 case."[75] This interpretation is consistent with the plain language of the statute. "[A] forebear of section 1334(c)(2) referred to a state court action that 'has been or will be timely instituted.'"[76] The current version of the statute states, "the district court shall abstain from hearing such proceeding if an action *is commenced*, and can be timely adjudicated, in a State forum of appropriate jurisdiction."[77] This language supports a finding that the case must be pending in state court prior to initiation of the bankruptcy proceeding for mandatory abstention to apply.[78] Therefore, the prerequisites to mandatory abstention under Section 1334(c)(2) are not met, and the Court finds mandatory abstention is not required in this case.

### C. *Permissive Abstention and Equitable Remand*

Even when a court has jurisdiction over a proceeding pursuant to 28 U.S.C. § 1334(b), it may elect to abstain from hearing that proceeding pursuant to 28 U.S.C. § 1334(c)(1), which states:

---

[74] *See Bender Shipbuilding & Repair Co. v. Caterpillar, Inc.*, No. 10-0092, 2012 WL 1372199, at *5 (S.D. Ala. Apr. 16, 2012) (holding that the requisites for mandatory abstention were met because the claim did not give rise to admiralty jurisdiction); *In re Gibson & Cushman Dredging Corp.*, 100 B.R. 634, 638 (E.D.N.Y. 1989) ("Because the mandatory abstention provision of Section 1334 applies only to related proceedings based upon State Law that could not have been commenced in Federal Court, that provision has no application to the admiralty claim presented by Milam.").

[75] 1 Collier on Bankruptcy P 3.05 (16th 2025) (collecting cases).

[76] *Id.*

[77] 28 U.S.C. § 1334(c)(2) (emphasis added).

[78] *Doe v. Roman Cath. Church of the Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 714–715 (E.D. La. 2022).

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

"[C]omity requires federal respect for state courts' competency to conduct proceedings and enter judgments."[79] In interpreting whether this standard is met, courts look to the factors that govern mandatory abstention under 28 U.S.C. § 1334(c)(2), and the Court may permissibly abstain from a case where a party is asserting "related to" jurisdiction and some of the requirements for mandatory abstention are met.[80] Additionally, permissive abstention may be appropriate when the plaintiff's claims "hinge solely on questions of state law and invoke no substantive right created by federal bankruptcy law."[81]

This permissive abstention provision is implemented in conjunction with 28 U.S.C. § 1452(b), which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1334(c) and 28 U.S.C. § 1452(b) are "kindred statutes."[82] Both statutes evince a congressional policy to allow state court trials involving state law to proceed absent countervailing circumstances, at least where Section 1334 is the only basis for federal jurisdiction and the litigation can be timely completed in state court.[83] "Because the statutes are similar in purpose and spirit, circumstances which weigh in favor

---

[79] *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.*, 282 F.R.D. 146, 159 (E.D. La. 2012) (internal citations omitted).

[80] *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206–07 (5th Cir. 1996) ("Nothing [ ] prevents a court from permissively abstaining under [Section] 1334(c)(1) where some, but not all, of the requirements for mandatory abstention are met.").

[81] *Id.* at 1207.

[82] *Hills v. Hernandez*, No. 98-1108, 1998 WL 241518, at *3 (E.D. La. May 12, 1998) (quoting *In re Rodham*, 193 B.R. 971, 976 (N.D. Ala. 1996)).

[83] *Id.*

of discretionary abstention or dictate mandatory abstention under the subsections of section 1334(c), likewise weigh in favor of or constrain remand under section 1452(b)."[84]

In *Browning v. Navarro*,[85] the Fifth Circuit listed eight considerations for equitable remand: (1) forum *non conveniens*; (2) if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) whether a state court is better able to respond to questions involving state law; (4) the expertise of a particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and (8) a lessened possibility of an inconsistent result.[86] For the reasons discussed herein, on balance, these factors do not favor equitable remand and permissive abstention.

The first factor, regarding convenience of the forum, is neutral because the case was originally filed in the Civil District Court for the Parish of Orleans, which is located in the same area as this Court. The second factor regarding bifurcation weighs against abstention because the entire action can be tried in this Court. In fact, remanding this matter to state court would cause bifurcation of the issues, as certain claims must be brought in the limitation of liability action filed in this Court. The third factor, regarding the state court ruling on issues of state law, and the fourth factor, regarding expertise of the courts, both weigh against abstention because this matter involves maritime law.

---

[84] *Id.* (quoting *In re Rodham*, 193 B.R. at 976).

[85] 743 F.2d 1069, 1076 n.21 (5th Cir. 1984).

[86] When the issue is equitable remand and the appropriateness of permissive abstention under § 1334(c)(1), some district and bankruptcy courts cite these eight factors, others cite a list of 14 factors which include the requirements for mandatory abstention, and some cite both sets of factors. *See Regal Row Fina, Inc. v. Washington Mutual Bank*, No. 04-1033, 2004 WL 2826817, 8–9 (N.D. Tex. Dec. 9, 2004); *In re Ballard*, No. 12-30138, 2012 WL 4162382 (Bkrtcy. S.D. Tex., Sept. 19, 2012); *Sonnier v. Hesco Bastion USA, LLC*, No. 12-728, 2013 WL 5350853 (M.D. La., Sept. 23, 2013).

The fifth factor weighs against abstention because there will not be duplicative litigation if the case remains in this Court. The sixth factor weighs against abstention because Plaintiffs have not shown they will suffer prejudice litigating in this Court. The seventh factor, comity considerations, weigh against remand as this case involves maritime law. The policy "in favor of deciding questions of federal law in federal forums militates against permissive abstention."[87] Finally, the eighth factor weighs against abstention because there is not the possibility of an inconsistent result if all matters are litigated in this Court. Therefore, each of the eight factors is either neutral or weighs against abstention. Accordingly, permissive abstention is not appropriate in this case.

## V. Conclusion

For the reasons discussed above, the Court finds that it has jurisdiction over this matter under 28 § U.S.C. 1334(b). Additionally, mandatory abstention does not apply, and permissive abstention is not appropriate in this case. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand and for Abstention[88] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this  10th  day of October, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT COURT**

---

[87] *Pharmacia LLC v. Grupo De Inversiones Suramericana S.A.*, No. 15-920, 2016 WL 5387776, at *2 (E.D. Tex. Sept. 27, 2016).

[88] Rec. Doc. 9.